Honorable Karen A. Overstreet

1

2

3

4

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

5

6  In re: SHEILA CALLANDRET

7      Debtor,

8  SHEILA CALLANDRET

9          Plaintiff,

10      vs.

11  PHILLIP WOLCOTT, ROBIN WOLCOTT
    ROBIN S WORLD, INC., a dissolved
12  Washington for-profit corporation;
    RAYMOND SANDOVAL, RGS LEGAL,
13  INC., a dissolved Washington for-profit
    corporation; RGS REAL ESTATE INC., a
14  dissolved Washington for-profit corporation;
    JOHN DOE MORTGAGE BROKER;
15  LEHMAN BROTHERS FSB, a dissolved
    foreign corporation, and any of its successors
16  in interest which may include, AURORA
    LOAN SERVICING LLC, a foreign limited
17  liability corporation; JOHN DOES 1
    THROUGH 50; and ANY OTHER
18  UNKNOWN PERSONS OR ENTITIES
    having any interest in the property described
19  herein and located at 145 28th Ave., Seattle,
    Washington, 98122.
20
           Defendants.
21

22

23

BANKRUPTCY CASE No. 09-20519 KAO

ADVERSARIAL PROCEEDING No.


COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF, DAMAGES,
QUIET TITLE, AND TO DETERMINE
POTENTIAL CREDITORS' RIGHTS TO
SECURED AND UNSECURED CLAIMS

COMPLAINT… - 1

# I. PRELIMINARY STATEMENT

1.1 The Debtor/Plaintiff, Sheila Callandret, brings this adversarial proceeding because of the fraudulent actions of the Defendants, Raymond Sandoval, RGS Legal Inc., Phillip Wolcott, Robin Wolcott and Robin S World, Inc. These defendants and other unknown co-conspirators defrauded Ms. Callandret in a classic "foreclosure rescue scam" by convincing her and her mother to deed over interest in Ms. Callendret's home on the false promise that Ms. Callendret would be able to regain all interest in the home in the future.

1.2 Moreover, the Wolcott defendants continued to demand monthly payments of over $4500 per month, even though the Wolcott defendants had failed to make mortgage payments due and owing on Ms. Callandret's home for many months. Ms. Wolcott falsely promised Ms. Callandret that by making such payments Ms. Callandret would be able to keep the home from being sold at a foreclosure sale. In reliance upon Ms. Wolcott's misrepresentations, Ms. Callandret made her monthly payments to the Wolcott defendants through September 2009.

1.3 Unfortunately, Ms. Callandret was forced to seek Chapter 13 protection once it became clear that the Wolcott defendants were not going to actually save her home and after the entity that claims to have authority to foreclose on the property, Aurora Loan Services LLC, refused to continue the foreclosure sale then scheduled for Friday, October 9, 2009.

1.4 A foreclosure sale is utterly inappropriate because Ms. Callandret has legal interests in the property that pre-date any interest conveyed via a deed of trust from Phillip Wolcott to any lender. The lender, believed to be Lehman Brothers FSB, had constructive and actual knowledge of Ms. Callandret's interest in the property because Ms. Callandret continued

COMPLAINT… - 2

to live on the property and because of the fraudulent and unconventional arrangements between the Ms. Callandret and the Sandoval and Wolcott defendants.

1.5     Ms. Callandret has brought suit against Lehman Brothers FSB, and any of its successors in interest which may include, Aurora Loan Servicing LLC, and other as yet unknown entities, so that the Court may determine that Ms. Callandret is entitled to clear title and possession of the property free of any alleged lien Lehman Brothers FSB or any of its successors in interest may assert against the subject property.

1.6     Ms. Callandret has brought this adversarial proceeding against Mr. Wolcott to determine the nature of any claim he may have against Ms. Callandret's estate and her home and for damages because of breach of contract and failure to comply with mandatory provisions of the Truth in Lending Act and other applicable laws and regulations.

1.7     Ms. Callandret has brought claims for damages against Mr. Sandoval, Mr. Wolcott, Ms. Wolcott and the corporate entities they created in an effort to perpetuate these and other frauds, because each is individually and jointly liable for the economic, emotional and physical damages that Ms. Callandret has suffered.  These claims are matters related to the bankruptcy estate and so appropriately brought in this adversarial proceeding.

1.8     Ms. Callandret asks the Court to determine whether any claims Mr. Wolcott may have against Ms. Callandret's bankruptcy estate are secured or unsecured claims and to declare that Lehman Brothers FSB or any of its successors in interest have no allowable claims either secured or unsecured that it may assert against Ms. Callandret's bankruptcy estate.

1.9     Final resolution of these claims will allow Ms. Callandret to propose a Chapter 13 plan that appropriately addresses debts she legitimately owes and allows her to keep her family home.

COMPLAINT… - 3

## II. JURISDICTION

2.1    Ms. Callandret, the plaintiff/debtor, filed a petition seeking bankruptcy protection under Chapter 13 on Thursday, October 8, 2009. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding. Other claims in this adversarial proceeding are related to the bankruptcy case and the disposition of assets and liabilities and so are appropriately raised here. The plaintiff/debtor agrees to the bankruptcy judge entering final orders in this case.

## III. PARTIES

3.1    Plaintiff, Sheila Callendret, is a natural person residing in Seattle, King County, Washington. Ms. Callandret is also the debtor in the Chapter 13 bankruptcy action of which this adversarial proceeding is a part.

3.2    Defendant, Robin Wolcott, is a natural person who on information and belief resides in King County, Washington.

3.3    Defendant, Robin S. World, Inc., is a dissolved Washington corporation that was wholly owned, operated and controlled by Defendant Robin Wolcott.

3.4    Defendant, Phillip Wolcott, is a natural person who on information and belief resides out of state in Oregon.

3.5    Hereinafter the defendants Robin Wolcott, Phillip Wolcott, and Robin S. World, Inc., shall be collectively referred to as the "Wolcott defendants", unless specifically identified by name below.

3.6    Defendant, Raymond Sandoval, is a natural person who on information and belief resides out of state in New Mexico.

COMPLAINT... - 4

3.7    RGS Legal, Inc., is a dissolved Washington corporation that was wholly owned, operated and controlled by Defendant, Raymond Sandoval.

3.8    RGS Real Estate, Inc., is a dissolved Washington corporation that was wholly owned, operated and controlled by Defendant, Raymond Sandoval.

3.9    Hereinafter the defendants Raymond Sandoval, RGS Legal, Inc., and RGS Real Estate, Inc., shall be collectively referred to as the "Sandoval defendants" unless specifically identified by name.

3.10    Defendant, Lehman Brothers FSB, is a dissolved foreign corporation.

3.11    Defendant, Aurora Loan Services LLC, is a foreign corporation, licensed to service home loans in the State of Washington. Aurora Loan Services has asserted that it is the servicing agent upon the home loan described in more detail below. The plaintiffs have named Aurora Loan Services in order to ensure that all parties that claim an interest in the property are properly named. However, to date Aurora Loan Services as not presented any evidence that it holds an actual interest in the property or in this is action. Until it does so, the plaintiffs deny that Aurora Loan Services has any cognizable interest in the subject property or in this action. Aurora's registered agent is Corporation Service Company, 6500 Harbour Heights Pkwy Ste 400, Mukilteo, Washington 98275.

3.12    Defendant, John Doe Lender, is an unknown entity that holds or purports to hold a promissory note and deed of trust on the subject property. At present, plaintiffs do not have sufficient information to identify the lender with any particularity. Plaintiffs will identify the John Doe Lender following receipt of discovery.

COMPLAINT... - 5

3.13    Defendant, John Doe Mortgage Broker, is an unknown person, persons, entity or entities that assisted the Wolcott and Sandoval defendants in their illegal and fraudulent foreclosure rescue scams.

3.14    Defendants John Doe 1 through 50 are as yet unknown and unnamed persons or entities that were involved in the fraudulent activities described below and/or are any other presently unknown and unnamed persons or entities who claim any interest in the property described below.

## VI.    STATEMENT OF FACTS

4.1    Ms. Callandret inherited her home located at 145 28th Ave., Seattle, King County Washington, 98122 from her grandfather's estate following his death.

4.2    The legal description of the property is:

LOT 4, BLOCK 2 WASHINGTON PLACE ADDITION, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 7 OF PLATS, PAGE 10 IN KING COUNTY WASHINGTON, EXCEPT THE NORTH 5 FEET THEREOF IN KING COUNTY, WASHINGTON

4.3    Ms. Callandret's mother, Mary Scott, lives in a home immediately adjacent to Ms. Callandret's home at 149 28th Ave., Seattle, WA 98122.

4.4    In October 2005, Ms. Scott and Ms. Callandret sought legal advice from Raymond Sandoval and RGS Legal Inc., regarding Ms. Scott's home and difficulty she was having with refinancing it.

4.5    Defendant Raymond Sandoval was practicing law in Seattle, Washington under Washington State Bar Number 33792 at the time.  Mr. Sandoval's bar membership is presently listed as inactive and he has moved to New Mexico.  Mr. Sandoval has dissolved RGS Legal Inc.

COMPLAINT… - 6

Columbia Legal Services
101 Yesler Way, #300
Seattle, WA 98104
Phone: (206) 464-5933 Fax: (206) 328-3386

4.6     At Mr. Sandoval's recommendation and in order to assist her mother get a loan, Ms. Callandret agreed to deed her home to Ms. Scott.

4.7     Ms. Scott and Ms. Callandret, however, understood and agreed that the home continued to be actually owned by Ms. Callandret.

4.8     Ms. Callandret paid the taxes and mortgage payments on the home and arranged for regular maintenance.  However, she had trouble meeting these financial requirements in 2006.

4.9     Ms. Callandret then sought legal advice from Raymond Sandoval once again.

4.10    Rather than explore other potential options or advise Ms. Callandret about all of her legal options, Mr. Sandoval conspired with the Defendants Phillip Wolcott and Robin Wolcott to steal the equity in Ms. Callandret's home by inducing her to enter into a fraudulent "foreclosure rescue scam".

4.11    Robin Wolcott is Phillip Wolcott's daughter and operated as Phillip Wolcott's agent throughout this transaction and has continued to do so to the present day.

4.12    The defendants Robin and Phillip Wolcott conspired together to defraud Ms. Callandret and take her home from her.

4.13    These defendants have engaged in similar behavior regarding other properties and against other homeowners as well.

4.14    Robin Wolcott created, operated and owned Robin S. World Inc., to further this and other foreclosure rescue scams to which she was a party or with which she was affiliated.

4.15    Mr. Sandoval and the Wolcotts promised Ms. Callandret that she would be able to avoid foreclosure and remain in her home if she agreed to enter into a complicated legal transaction with the Wolcotts.

COMPLAINT… - 7

4.16    Mr. Sandoval drafted the documents associated with this complicated legal transaction.

4.17    Though he was Ms. Callandret's attorney, Mr. Sandoval drafted documents with the Wolcott's assistance that were one-sided, usurious, illegal and fraudulent and favored the Wolcott defendants at the expense of Ms. Callandret's interests.

4.18    In addition, Mr. Sandoval and his corporate alter egos illegally profited from the transaction with Ms. Callandret that he and the Wolcott defendants orchestrated.

4.19    The transaction which was never appropriately explained to Ms. Callandret involved her mother, Mary Scott, signing a quit claim deed to Ms. Callandret's home naming Phillip Wolcott as grantee.

4.20    It also involved the execution of a 36 page legal document entitled Real Estate Contract Agreement for Deed.

4.21    In this document Phillip Wolcott agreed to assist Ms. Callandret in getting back on her feet financially and to save her home, if she made regular monthly payments to him.

4.22    In this document, the parties acknowledge that the transaction is in the nature of a loan.

4.23    In this document, Phillip Wolcott acknowledges that Ms. Callandret is entering the transaction because he has access to credit programs and lending options that are not available to Ms. Callandret.

4.24    This document includes a break down of "Monthly Possessor's Payment" under which Ms. Callandret can choose between four different "payment options" to pay back her loan from Mr. Wolcott:

A minimum payment of $3,000 monthly

COMPLAINT… - 8

Interest Only Payment of $4,485.51
30 Year Payment of $4,999.98 Monthly; or
15 year Payment of $5,026.36 monthly.

4.25     In this document, Mr. Wolcott demands that Ms. Callandret make monthly payments of $4485.51 to him. This monthly payment includes the following charges:

| | |
|---|---|
| "Monthly Possessor's Payment" | $3757.25 |
| "Monthly Cash Flow to Seller\Investor" | $300.00 |
| "Warranty Payment – Monthly" | $39.99 |
| "Monthly Property Taxes" | $303.59 |
| "Monthly Property insurance" | $49.70 |
| "Payment Processing Fee" | $34.98 |

4.26     This transaction created an equitable mortgage between Mr. Wolcott and Ms. Callandret regarding the property.

4.27     None of these payments were properly disclosed to Ms. Callandret as required by the Truth in Lending Act nor where they included as finance charges in any calculation of the annual percentage rate charged by Mr. Wolcott to Ms. Callandret.

4.28     Nor was Ms. Callandret provided with a notice of her right to rescind the transaction within three days as required by the Truth in Lending Act.

4.29     In this document, Mr. Sandoval promised to provide Ms. Callandret with assistance in improving her credit and assist her in finding new financing that would allow her to pay off the loan from Mr. Wolcott.

4.30     Notice of the document between Ms. Callandret and Mr. Wolcott was recorded under recorders number 20070319000058 with the King County Recorder's Office on March 19, 2007.

COMPLAINT... - 9

4.31　At no time after entering into this transaction did Ms. Callandret move from her home or did any of the defendants take up residence there or indicate by words or deeds any intent to take up residence therein.

4.32　Following the execution of these documents, the Wolcotts, with Mr. Sandoval's assistance and the assistance of an as yet unidentified John Doe Mortgage Broker, skimmed off the equity in Ms. Callandret's home by taking out a new loan of over $550,000.

4.33　The defendants did not provide Ms. Callandret with any of the documents associated with the new loan on their home.

4.34　The defendants therefore will require discovery in order to properly determine the extent to which each defendant profited from this arrangement and the role that the as yet unidentified mortgage broker played in this transaction and profited from it.

4.35　However, upon in formation and belief, the plaintiffs believe that after paying off Ms. Callandret's existing mortgage, each of the defendants took a portion of the remaining proceeds from the new loan for themselves.

4.36　In addition, they set up trust accounts into which they deposited significant additional sums from the new loan's proceeds.

4.37　Though ostensibly for Ms. Callandret's benefit, the defendants proceeded to regularly raid these accounts and convert the funds to their own purposes.

4.38　The Wolcott defendants required Ms. Callandret to make monthly $4500 payments to them.

4.39　The Wolcott defendants paid the new mortgage on the home for a period of time. However, at some time in 2008, the Wolcotts ceased making any mortgage payments on the Callandret home.

COMPLAINT… - 10

4.40    However, they continued to demand that Ms. Callandret make the monthly $4,500 payments to them, until June or July 2009 when the defendants instead demanded that Ms. Callandret pay $4,100 to them so that they could pay the mortgage.

4.41    They assured Ms. Callandret that she would be able to regain full interest in her home if she continued to make the monthly $4,100 payments to them.

4.42    They made these misrepresentations even though they had no intent to pay the mortgage, the very purpose for which these payments were intended.

4.43    Upon information and belief, Raymond Sandoval and the Wolcotts entered into a number of similar fraudulent and unfair and deceptive transactions with four or more home owners around the Seattle area within a few months of each other.

4.44    Upon information and belief, the Wolcotts and other conspirators entered into a number of similar fraudulent and unfair and deceptive transactions with four or more home owners around the Seattle area within a few months of each other.

4.45    Upon information and belief, Raymond Sandoval and other conspirators entered into a number of similar fraudulent and unfair and deceptive transactions with four or more home owners around the Seattle area within a few months of each other.

4.46    Upon information and belief, Raymond Sandoval and the Wolcotts received the assistance of an as yet unidentified mortgage broker(s) in arranging and originating the loan on the Callandret home; or Ms. Wolcott or Mr. Sandoval acted as a mortgage broker and arranged and/or originated the loan on Ms. Callandret's home.

4.47    In addition to liability for her own acts of wrong doing, Ms. Wolcott is also personally liable for any and all acts carried out in the name of Robin S. World Inc., or by any of its other officer, employees or agents.

COMPLAINT… - 11

1    4.48    Ms. Wolcott operated, owned and controlled Robin S. World, Inc., solely for her

2    own benefit and was the corporation's alter ego.   Ms. Wolcott failed to comply with corporate

3    formalities and utilized Robin S. World, Inc., in order to further the fraud she perpetrated against

4    Ms. Callandret, as well as other homeowners.  It is therefore appropriate to pierce the corporate

5    veil and assign personal liability to Ms. Wolcott for all acts of the corporation and those of the

6    corporation's officers, employees or agents.

7    4.49    In addition to liability for his own acts of wrong doing, Mr. Sandoval is also

8    personally liable for any and all acts carried out in the name of RGS Legal, Inc., and RGS Real

9    Estate, Inc., and any of their officers, employees or agents.

10   4.50    Mr. Sandoval operated, owned and controlled RGS Legal, Inc., and RGS Real

11   Estate Inc., solely for his own benefit and was the corporation's alter ego.   Mr. Sandoval failed

12   to comply with corporate formalities and utilized these corporate entities in order to further the

13   fraud he perpetrated against Ms. Callandret and Ms. Scott as well as other homeowners.  It is

14   therefore appropriate to pierce the corporate veils and assign personal liability to Mr. Sandoval

15   for all corporate acts and those of their officers, employees or agents.

16   4.51    Upon information and belief, the mortgage broker who assisted with the loan on

17   Ms. Callandret's home had actual and/or constructive notice of the arrangement with Ms.

18   Callandret and of the interest that she continued to enjoy in her home.

19   4.52    The defendant, Lehman Brothers FSB, and any of its successors in interest or any

20   unidentified lender which originated the loan upon the Callandret home took its interest with

21   actual or constructive notice of Ms. Callandret's pre-existing interest in the home.

22

23

COMPLAINT… - 12

4.53    Ms. Callandret lived in the home at the time of the transfer of interest from Phillip Wolcott to the lender, her presence in the home constituted actual and constructive notice to the lender of her pre-existing interest.

4.54    In addition, given the large number of similar, real estate transactions in which Mr. Sandoval, the Wolcotts and other co-conspirators were involved over a short period of time, the mortgage broker and lender who originated the loan on the Callandret home had actual and constructive notice of the unusual nature of these transactions and of the reality that they involved fraudulent foreclosure rescue scams, which have been prevalent throughout the real estate industry over the last several years.

4.55    Any subsequent assignee of the note and deed of trust granted by Phillip Wolcott takes its interest in the Callandret home subject to Ms. Callandret's pre-existing interest in her home.

4.56    As all of the defendants, including the lender, had actual or constructive knowledge of Ms. Callandret's superior title and interests in the property, they are not entitled to any status as bona fide purchasers or holders-in-due-course.

4.57    On October 12, 2009, Ms. Callandret exercised her right to rescind the transaction by letter to the Wolcott defendants and other potentially interested parties.

4.58    More than 20 days have passed and the defendants have taken no steps to rescind the transaction.

## V.    CLAIMS FOR RELIEF

5.1    The plaintiffs re-allege and incorporate the preceding paragraphs and each subsequent paragraph of this complaint into each of the following claims for relief as though set forth in full therein.

COMPLAINT... - 13

## First Claim for Relief – Quiet Title

5.2     Plaintiffs acquired title to the property located at 145 28th St. Seattle, King County Washington 98122.

5.3     Although Mary Scott executed a "deed" purporting to convey the property to Phillip Wolcott, the deed was procured by fraud and deceit and under false pretenses and any agreement or agreements providing for such transfer are null and void as against public policy, as procedurally and substantively unconscionable, for failure of consideration, and because of the Truth in Lending Act and various violations of other applicable statutes and regulations.

5.4     In addition, though termed a "deed", in fact, the transaction at issue created an equitable mortgage in that the parties intended that Ms. Callandret and her mother convey a security interest in Ms. Callandret's home to the Wolcott defendants, rather than an outright conveyance of title in the property to the Wolcott defendants.  As the Wolcott defendants have breached the agreement creating that security interest, Ms. Wolcott is entitled to have title quieted to her to completely restore her full interest in the property and remove any cloud on title that the security interest may create.

5.5     Each of the following factors is present in this transaction proving that it is an equitable mortgage:

            a.     There is a gross disparity between the economic benefit received by the plaintiff and the value of the subject property;

            b.     The relative unbalanced sophistication of the parties;

            c.     The fact that Ms. Callandret was duped by her purported attorney to enter into this transaction;

COMPLAINT… - 14

Columbia Legal Services
101 Yesler Way, #300
Seattle, WA 98104
Phone: (206) 464-5933 Fax: (206) 328-3386

d.   The fact that Ms. Callandret remained in the subject property after the transaction;

e.   The fact that Ms. Callandret continued to pay taxes through her monthly payments to the Wolcotts;

f.   The fact that Ms. Callandret retained an option to "repurchase" the home, which was in fact in the nature of the repayment of a debt;

g.   The fact that the document executed between the parties indicates that the transaction was in the nature of a loan rather than a transfer of fee interest in property;

h.   The fact that Ms. Callandret themselves never understood the transaction as an out-right sale of her home, nor intended it as such.

5.6   These factors demonstrate that the deed transfer from Ms. Scott to Phillip Wolcott was that of an equitable mortgage.

### Second Claim for Relief – Quiet Title

5.7   This Count is pled against Phillip Wolcott, Lehman Brothers FSB, any successor in interest, including Aurora Loan Services, LLC, if appropriate, and any other unknown Owner and Nonrecord Claimants.

5.8   According to the formal terms of the Warranty Deed, Ms. Scott transferred title to Phillip Wolcott.

5.9   However, Mr. Wolcott acquired an equitable mortgage only, as set out in Claim 1 and incorporated by reference herein.

5.10   Lehman Brothers FSB and/or John Doe Lender were on actual or constructive notice that Mr. Wolcott held an equitable mortgage only.

COMPLAINT… - 15

5.11    Nonetheless, with the Deed of Trust executed to Lehman Brothers FSB or other John Doe Lender, Mr. Wolcott purported to grant a lien-hold interest to Lehman Brothers FSB and/or other John Doe Lender.

5.12    Because Mr. Wolcott had a mere equitable mortgage, its attempt to encumber the Property in favor of Lehman Brothers FSB and/or John Doe Lender is void.

5.13    Lehman Brothers FSB and/or John Doe Lender was on notice of the limited nature of the equitable mortgage interest held by Mr. Wolcott because of Ms. Callandrets' continuing occupancy of the her home.  Occupancy of residential property is public notice of a title interest therein, creating a requirement on the part of the lender to inquire into the nature of that title interest.

5.14    Here, due diligence on the part of Lehman Brothers FSB and/or John Doe Lender would have confirmed that Ms. Callandret was the long-time homeowner who had given an equitable mortgage on her home and had the option to "repurchase" the Property (*i.e.,* pay off the equitable mortgage loan).

5.15    In addition, given the prevalence of "foreclosure rescue scams" in the real estate industry, the unusual nature of the transactions and relationships between the parties, the possible existing relationships between the individual defendants, Sandoval and Wolcott, and the lender, and other unconventional aspects of this transaction and other similar transactions, the lender was on constructive or actual notice of the Ms. Callendret's pre-existing, superior interests in the property.

### Third Claim for Relief – Fraud and Misrepresentation

5.16    The Sandoval and Wolcott defendants and the as yet unidentified mortgage broker, made material assertions or representations regarding the nature of the transactions and

COMPLAINT… - 16

1  the relationships of the parties and regarding material elements of those transactions and

2  relationships and such assertions or representations were not in accordance with the true facts.

3       5.17    The Sandoval and Wolcott defendants made these misrepresentations either

4  knowingly, recklessly, or negligently and had reason to know that the assertions or

5  representations were not in accordance with the true facts and that Ms. Callandret would rely on

6  those false assertions or representations.

7       5.18    Ms. Callandret did in fact reasonably rely on defendants' material assertions or

8  representations and has suffered damage as a result of defendants' material misrepresentations.

9  In addition, Ms. Scott is entitled to rescind any agreements with the defendants because of the

10  defendants' frauds and misrepresentations.

11       5.19    Because Ms. Callandret's participation in the transaction was caused by the

12  fraudulent conduct of the Sandoval and Wolcott defendants, no entity that received its interest

13  from any of the other defendants is a bona fide purchaser for value or a holder in due course nor

14  are any of its successors in interest.

15       5.20    Any interest any such entities received is subject to Ms. Callandret's pre-existing

16  and superior interest and is void and unenforceable.

17  **Fourth Claim for Relief—Professional Misrepresentation**

18       5.21    The Sandoval and Wolcott defendants, and the as yet unidentified mortgage

19  brokers and other John Doe defendants, are either attorneys, realtor estate brokers, associate real

20  estate brokers, or real estate salespersons (hereinafter "realtors") as defined in RCW 18.85.010,

21  and/or mortgage brokers, as defined in RCW 19.146.010(14), and/or credit services

22  organizations, as defined at RCW 19.134.010(2).  The defendants held themselves out to the

23  public as such.

COMPLAINT… - 17

5.22    Holding themselves out to the public and to Ms. Callandret as attorneys, realtors, mortgage brokers, and/or credit services organizations gave rise to a duty of care on the defendants' part to possess and to exercise that degree of skill, care, knowledge and diligence ordinarily possessed and exercised by reasonable and prudent realtors, mortgage brokers, and/or credit services organizations conducting business in the state of Washington

5.23    Nonetheless, the defendants in their capacities as attorneys, realtors, mortgage brokers and/or credit services organizations, made material assertions or representations regarding the nature of the transactions and the relationships of the parties and regarding material elements of those transactions and relationships and such assertions or representations were not in accordance with the true facts.

5.24    The defendants, in their capacities as attorneys, realtors, mortgage brokers and/or credit services organizations, made these misrepresentations either knowingly, recklessly, or negligently and had reason to know that their assertions or representations were not in accordance with the true facts, and that Ms. Callandret would rely on those false assertions or representations.

5.25    Ms. Callandret did in fact reasonably rely on the defendants' misrepresentations.

5.26    The defendants' misrepresentations constitute professional misrepresentations.

5.27    Ms. Callandret has suffered damage as a result of these representations and she is entitled to rescind any agreements with the defendants on this basis.

5.28    Because Ms. Callandret's participation in the transaction was caused by the fraudulent conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

COMPLAINT… - 18

1     5.29    Any interest any such entities received is subject to Ms. Callandret's pre-existing

2 and superior interest and is void and unenforceable.

**Fifth Claim for Relief – Transactions Void As Unconscionable**

4     5.30    Any agreements between the Sandoval and/or Wolcott defendants and Ms.

5 Callandret is both procedurally and substantively unconscionable and is therefore void and

6 unenforceable.

7     5.31    Ms. Callandret is entitled to rescind any agreement with the defendants and to

8 seek appropriate damages on this basis.

9     5.32    Because Ms. Callandret's participation in the transaction was caused by the

10 fraudulent, unlawful and unconscionable conduct of the Sandoval and Wolcott defendants, no

11 entity that received its interest from any of the other defendants is a bona fide purchaser for value

12 or a holder in due course nor are any of its successors in interest.

13     5.33    Any interest any such entities received is subject to Ms. Callandret's pre-existing

14 and superior interest and is void and unenforceable.

**Sixth Claim for Relief – Transactions Void As Against Public Policy**

16     5.34    Any agreements between the Sandoval and/or Wolcott defendants and Ms.

17 Callandret is void because they violate public policy outlawing usurious, fraudulent,

18 unconscionable, one-sided, unlawful, and inequitable terms, provisions or agreements.  Such

19 agreement is therefore void and unenforceable.

20     5.35    Ms. Callandret is entitled to rescind any transaction with the defendants and to

21 seek appropriate damages on this basis.

22     5.36    Because Ms. Callandret's participation in the transaction was caused by the

23 fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity

COMPLAINT… - 19

that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

5.37    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

### Seventh Claim for Relief – Violations of Usury Statute

5.38    The transaction between the Sandoval and Wolcott defendants and Ms. Callandret is usurious and unlawful because the effective rate of interest which the defendants took for themselves exceeds the statutory limit of RCW 19.52.020.

5.39    Ms. Callandret incurred significant damages as a direct and proximate result of the defendants' usurious conduct.

5.40    Ms. Callandret is entitled to rescind any transaction with the defendants and to seek appropriate damages on this basis.

5.41    Because Ms. Callandret's participation in the transaction was caused by the fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

5.42    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

### Eighth Claim for Relief – Breach of Fiduciary Duty

5.43    The Sandoval and Wolcott defendants induced Ms. Callandret into placing her trust and confidence in them.  The defendants were Ms. Callandret's agents and fiduciaries.

5.44    The defendants' fiduciary duties and duties of good faith also arose because they are attorneys or mortgage brokers as defined at RCW 19.146.010(14).

COMPLAINT… - 20

5.45    The defendants breached their fiduciary duties and duties of good faith to Ms. Callandret in many ways, as detailed above.

5.46    Ms. Callandret has been injured by defendants' breaches of their fiduciary duties in that the defendants have stolen equity that Ms. Callandret held in her home, encumbered her home with a significant home loan, failed to make payments upon that loan, and failed to provide additional services and promises to Ms. Callandret.  Ms. Callandret has also suffered emotional and other economic damages as a direct and proximate result of the defendants' breach in an amount to be proven at trial.  Ms. Callandret is entitled to rescind any transaction with the defendants and to seek appropriate damages on this basis.

5.47    Because Ms. Callandret's participation in the transaction was caused by the fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

5.48    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

**Ninth Claim For Relief – Breach of Covenant of Good Faith and Fair Dealing**

5.49    The Sandoval and Wolcott defendants' misconduct as alleged herein represents serious and repeated failures to abide by the covenant of good faith and fair dealing imposed on all persons conducting business in this state.

5.50    Ms. Callandret has incurred significant damages as a direct and proximate result of the defendants' failure to act fairly and in good faith.  Ms. Callandret is entitled to rescind any transaction with the defendants and to seek appropriate damages on this basis.

COMPLAINT… - 21

5.51    Because Ms. Callandret's participation in the transaction was caused by the fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

5.52    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

**Tenth Claim For Relief – Violations of Consumer Protection Act**

5.53    The Sandoval and Wolcott defendants committed myriad unfair and deceptive acts and practices as described above in violation of RCW 19.86 et. seq.

5.54    All such acts occurred in the course of trade or commerce.

5.55    The defendants' unfair and deceptive acts or practices were the direct and proximate cause of serious injuries to Ms. Callandret's property or business and violated the public interest.

5.56    The defendants engaged in these unfair, unconscionable, and deceptive acts intentionally and purposefully, with the objective of defrauding Ms. Callandret out of her property and all or a portion of her equity in the property.

5.57    Ms. Callandret is entitled to rescind any transaction with the Sandoval and Wolcott defendants and to seek appropriate damages on this basis.

5.58    Because Ms. Callandret's participation in the transaction was caused by the fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

COMPLAINT… - 22

5.59    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

### Eleventh Claim for Relief—Per Se Violations Of Consumer Protection Act

5.60    As alleged herein, the Sandoval and Wolcott defendants' actions constitute violations of RCW §§ 19.134 et seq. and 19.146 et seq. and 15 U.S.C. § 1601 et seq.

5.61    Violations of RCW 19.134 et. seq., RCW 19.146 et seq., 15 U.S.C. § 1601 et. seq. constitute per se violations of the Washington State Consumer Protection Act. RCW 19.86 et. seq.

5.62    These violations of the CPA were the direct and proximate cause of serious injuries to Ms. Callandret's business or property and she is entitled to money damages as a result thereof in an amount to be proven at the time of trial and treble damages as provided under the CPA.

5.63    Ms. Callandret is entitled to rescind any transaction with the defendants and to seek appropriate damages on this basis.

5.64    Because Ms. Callandret's participation in the transaction was caused by the fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

5.65    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

### Twelfth Claim for Relief – Violations of Mortgage Broker Practices Act

5.66    Each of the the Sandoval and Wolcott defendants is a mortgage broker as that term is defined at RCW 19.146.010(14).

COMPLAINT… - 23

5.67    The defendants individually and collectively violated their obligations as mortgage brokers imposed upon them under RCW 19.146 et seq.

5.68    The defendants' violations were the direct and proximate causes of Ms. Callandret's economic and emotional injuries in an amount to be proven at trial.

5.69    Ms. Callandret is entitled to rescind any transaction with the defendants and to seek appropriate damages on this basis.

5.70    Because Ms. Callandret's participation in the transaction was caused by the fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

5.71    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

**Thirteenth Claim for Relief – Violations of Credit Services Organization Act**

5.72    The Sandoval and Wolcott defendants are credit services organizations both individually and collectively as defined at RCW 19.134.010(2).

5.73    Each promised to stop, prevent or delay the foreclosure of a deed of trust, mortgage, or other security agreement.

5.74    Each received valuable consideration for those promises.

5.75    Each made or used untrue or misleading representations that operated as a fraud or deception upon Ms. Callandret in connection with these promises and activities.

5.76    The defendants individually and collectively failed to provide Ms. Callandret with an information statement as required by RCW 19.134.040 that meets the requirements of RCW 19.134.050 and .060 prior to execution of the transactions between the parties.

COMPLAINT… - 24

5.77    Ms. Callandret was damaged by the defendants' violations in an amount to be proven at trial.

5.78    Defendants maliciously and intentionally violated their obligations as credit services organizations with the desire and effect to defraud Ms. Callandret.  She is therefore entitled to her actual and punitive damages in an amount to be proven at trial as provided at RCW 19.134.080(1).

5.79    Ms. Callandret is also entitled to rescind any transaction with the defendants on this basis.

5.80    Because Ms. Callandret's participation in the transaction was caused by the fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

5.81    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

**Fourteenth Claim For Relief – Breach of Contract**

5.82    If the Court finds that the transactions between the Sandoval and Wolcott defendants and Ms. Callandret were valid, then in the alternative, Ms. Callandret is entitled to rescind any such transaction with the defendants and to seek appropriate damages because the defendants materially breached any such agreement on a number of occasions and in a number of ways.

5.83    Ms. Callandret has at all times performed all the stipulations, conditions, and agreements stated in the agreements between the parties and has done so in the manner specified by the agreements.

COMPLAINT… - 25

5.84    By contrast, the defendants have failed and refused to perform their obligations they accepted as part of the agreements between the parties.

5.85    The defendants' breaches are material and go to the essence of the agreements between the parties.

5.86    Because of the defendants' breaches, Ms. Callandret has suffered severe economic injuries.

5.87    Ms. Callandret is` entitled to appropriate damages and to rescind the agreements between the parties because of the defendants' breaches.

**<u>Fifteenth Claim for Relief — Truth in Lending/Home Ownership & Equity Protection Acts</u>**

5.88    Defendants regularly extend credit to consumers that is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required.

5.89    Defendants extended credit to Ms. Callandret which was secured by an interest in the real property that is the subject of this action.

5.90    Defendants did not make any of the disclosures required in a consumer credit transaction security by a residence under the Truth-In-Lending Act (TILA), 15 U.S.C. § 1601 et seq.

5.91    Defendants did not provide Ms. Callandret with any copies of a "notice of right to cancel," as required by 15 U.S.C. § 1635.

5.92    Ms. Callandret has properly exercised her right to rescind this transaction by mailing notice of rescission to the defendants on October 12, 2009.

5.93    Because the credit transaction's annual interest rate was more than eight percentage-points higher than the benchmark treasury security rate for a 5-year term, the transaction was also subject to the Home Ownership & Equity Protection Act, 15 U.S.C. § 1639.

COMPLAINT… - 26

5.94    The credit transaction is subject to rescission for failure to make the material disclosures required by TILA.  *See* 15 U.S.C. § 1635.

5.95    The credit transaction is also subject to rescission for its inclusion of terms that are impermissible under HOEPA, such as a term causing the interest rate to increase upon default.  *See* 15 U.S.C. § 1639(d-e).

5.96    Ms. Callandret has suffered damages by reason of the defendants' violations of TILA and HOEPA and are entitled to rescind any agreement with the defendants on this ground.

5.97    In addition, the defendants have committed a second and additional violation of TILA by failing to rescind the agreement within 20 days of the plaintiffs October 14, 2000 letter rescinding any agreements between the parties.

5.98    Because Ms. Callandret's participation in the transaction was caused by the fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

5.99    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

**Sixteenth Claim for Relief – Conversion**

5.100   The Sandoval and Wolcott defendants took and illegally converted property and funds belonging to Ms. Callandret to their own purposes without her permission.

5.101   Ms. Callandret has also suffered economic damages as a direct and proximate result of the defendants' conversion of her property in an amount to be proven at trial.  Ms. Callandret is entitled to rescind any transaction with the defendants and to seek appropriate damages on this basis.

COMPLAINT… - 27

Columbia Legal Services
101 Yesler Way, #300
Seattle, WA 98104
Phone: (206) 464-5933 Fax: (206) 328-3386

## Seventeenth Claim for Relief — Rescission

5.102    As detailed above, the defendants have engaged in a number of illegal, fraudulent and unfair acts, practices and breaches of existing obligations, all of which individually and collectively entitle Ms. Callandret to rescind any transaction that she may have reached with the defendants at any time in the past.

5.103    Because Ms. Callandret's participation in the transaction was caused by the fraudulent, illegal and unconscionable conduct of the Sandoval and Wolcott defendants, no entity that received its interest from any of the other defendants is a bona fide purchaser for value or a holder in due course nor are any of its successors in interest.

5.104    Any interest any such entities received is subject to Ms. Callandret's pre-existing and superior interest and is void and unenforceable.

## Eighteenth Claim for Relief – Restraint of Foreclosure Sale

5.105    Lehman Brothers FSB and/or John Doe Lender had actual or constructive notice of the other defendants' illegal, fraudulent and unfair acts, practices and breaches, therefore any security interest they or any of their successors in interest may hold in the property is void and unenforceable.

5.106    Any subsequent assignee is therefore not a bona fide purchaser for value or holder in due course.

5.107    Therefore, the original lender or its successor in interest and any trustee acting at its behest should be permanently restrained and prohibited from foreclosing upon Ms. Callandret's home and selling it.

COMPLAINT... - 28

# VI.   PRAYER FOR RELIEF

Plaintiffs pray that the Court grant the following relief:

6.1    A declaration and determination whether Phillip Wolcott or any of his successors in interest has a secured or unsecured claim against Ms. Callandret's home and a declaration and determination as to the extent of that claim after set off of all damages found owing to Ms. Callandret;

6.2    A declaration and determination that Lehman Brothers FSB and any of its successors in interest to any promissory note executed by Phillip Wolcott has no allowed secured claim against Ms. Callandret's home and no allowed unsecured claim in this bankruptcy case;

6.3    A declaration that any security interest asserted by Lehman Brothers FSB or any of its successors in interest in the subject property is void and unenforceable;

6.4    An order quieting full and unencumbered title in the property to the Sheila Callandret and an order requiring the defendants to take such other actions as to ensure that Ms. Callandret has complete and unencumbered title and interest in the property;

6.5    A declaration that any and all agreements between the Sandoval and Wolcott defendants and the plaintiffs are void and unenforceable, or in the alternative, if the Court finds that there exists any valid agreement between these parties, then a declaration that the defendants have materially breached any such agreement and that Ms. Callandret is entitled to rescind any such agreement on that basis;

6.6(a)  An order directing rescission of the Deed of Trust secured against Ms. Callandret's home and directing execution of all documents required to effect the rescission;

COMPLAINT… - 29

(b)     In the alternative to rescission, an order directing the present holder of any note to reform the offensive loan consistent with the means and ability of Ms. Callandret to timely satisfy the terms;

6.7     An order that Robin Wolcott, Robin S. World Inc., Phillip Wolcott, Raymond Sandoval, and RGS Legal Inc., RGS Real Estate, Inc., John Doe Mortgage Broker and John Does 1 – 50 return all money paid to them as part of their transaction with Ms. Callandret;

6.8     An award of compensatory, general and special damages as provided by law and in an amount to be proven at trial against Robin Wolcott, Robin S. World Inc., Phillip Wolcott, Raymond Sandoval, RGS Legal Inc., RGS Real Estate, Inc., John Doe Mortgage Broker and John Does 1 – 50, individually and personally and jointly and severally;

6.9     An award of statutory damages as provided by law against Robin Wolcott, Robin S. World Inc., Phillip Wolcott, Raymond Sandoval, RGS Legal Inc., RGS Real Estate, Inc., John Doe Mortgage Broker and John Does 1 – 50, individually and personally and jointly and severally individually and personally and jointly and severally;

6.10     An award of treble damages under the Consumer Protection Act RCW 19.86.090, against Robin Wolcott, Robin S. World, Inc., Phillip Wolcott, Raymond Sandoval, RGS Legal Inc., RGS Real Estate, Inc., John Doe Mortgage Broker and John Does 1 – 50 individually and personally and jointly and severally;

6.11     An award of punitive damages as provided under RCW 19.134.080(1) against Robin Wolcott, Robin S. World Inc., Phillip Wolcott, Raymond Sandoval, RGS Legal Inc., RGS Real Estate, Inc., John Doe Mortgage Broker and John Does 1 – 50, individually and personally and jointly and severally;

COMPLAINT… - 30

6.12    An award of debtor's counsel reasonable attorneys' fees and costs incurred in bringing this action pursuant to TILA, 15 U.S.C. § 1640; the CPA RCW 19.86.090; or other statute or contract against Robin Wolcott, Robin S. World, Inc., Phillip Wolcott, Raymond Sandoval, RGS Legal Inc., RGS Real Estate, Inc., John Doe Mortgage Broker and John Does 1 – 50, individually and personally and jointly and severally; and

6.13    Any and all further relief as the Court deems just, equitable and proper.


Respectfully submitted this 13th day of November, 2009.

COLUMBIA LEGAL SERVICES


_____/s/_____
Nicholas B. Straley, WSBA #25963
Attorney for the plaintiffs/debtor.

COMPLAINT… - 31